# In the United States Court of Federal Claims

No. 09-172L
Filed: May 20, 2011

| | | |
|---|---|---|
| * * * * * * * | | |
| ERNEST YBANEZ, et al., | * | Rails-to-Trails Act; Fifth Amendment Takings Clause; Surface Transportation |
| Plaintiffs, | * | Board; Application of State Property Law; RCFC 56(c) Cross-motions for Summary |
| v. | * | Judgment; National Trails System Act Amendments of 1983, |
| THE UNITED STATES OF AMERICA, | * | 16 U.S.C. § 1247(d); Texas Law; Scope of Railroad Easement |
| Defendant. | * | |
| * * * * * * * | | |

*Steven M. Wald* and *Brent W. Baldwin*, Baker Sterchi Cowden & Rice, St. Louis, MO, for plaintiffs.

*Jessica M. Held*, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**

**HODGES**, Judge.

Plaintiffs own property abutting a railway corridor in northern Texas. They allege that defendant took plaintiffs' property interests in the former Railroad right-of-way without just compensation. Action by the Surface Transportation Board prevented their lands from being subject to abandonment under Texas state law, according to plaintiffs. If the land subject to easements for railroad purposes had been abandoned, plaintiffs urge, it would have returned to them as owners in fee of the estate. When the Board issued a Notice of Interim Trail Use, or NITU, that regulatory action halted all possibility of abandonment proceedings under Texas law. Instead, the land under the easements became available for use as a recreational trail by the general public.

A taking may occur in Rails-to-Trails cases if a public trail is deemed to be beyond the scope or purpose of the easements granted to the railroad by landowners' predecessors in interest. The scope of these easements is often described as being for "railroad purposes." Courts have found trail use to be beyond the scope of the easements granted for railroad purposes in many of the Rails-to-Trails cases.

Plaintiffs filed a motion for summary judgment as to liability. Defendant filed a cross-motion, contending that trail use is within the scope of the original railroad use easements because the stated purposes include maintenance of the railway corridor.[1]  Unless the Government can show that the language of these easements is sufficiently broad to contemplate a public trail, or that the Railroad owns the land under its corridor in fee, a taking occurs. *See Ladd v. United States*, 630 F.3d 1015, 1023 (Fed. Cir. 2010).  The Court of Appeals for the Federal Circuit has held that trail use is beyond the intended scope of railroad-purpose easements when applying state laws; and it has established a bright line rule that the taking occurs when the Board issues a NITU. *Id.*  Defendant has not shown that we should make different findings regarding the permissible scope of railroad easements in applying the law of Texas.

A secondary issue has been the status of two plaintiffs whose lands are separated from the Railroad corridor by a road that is owned in fee simple by the County.  This cuts off any rights those plaintiffs would have to reversionary interests arising from the alleged taking.

## BACKGROUND

The Federal Government has regulated interstate railroad operations since enactment of the Interstate Commerce Act of 1887.  The first regulatory framework for addressing abandonment of railroad corridors was enacted in 1920. *See* Transportation Act of 1920, Pub. L. No. 66-152, 41 Stat. 456 (1920).  The Surface Transportation Board replaced the Interstate Commerce Commission in 1995 as the government agency with exclusive regulatory authority over the construction, operation, and abandonment of rail lines.  A railroad must seek permission from the Surface Transportation Board to cease operation or abandon service on a rail line. *See* 49 U.S.C. § 10903.

Congress enacted the Railroad Revitalization and Regulatory Reform Act of 1976 in part to strengthen the Government's regulatory authority in this area by allowing the sale of rail lines for public purposes and recreational uses.  This law introduced the process known as "railbanking." Pub. L. No. 94-210, 90 Stat. 31 (1976).  The National Trails System Act Amendments of 1983 was another attempt to promote outdoor recreation opportunities and railbanking. 16 U.S.C. § 1247 (2006).

The National Trails System Act provides an alternative to abandonment of a railroad right-of-way by allowing a railroad to negotiate with a state or local agency or private group to create a recreational trail along the right-of-way.  16 U.S.C. § 1247(d); *Caldwell v. United States*, 391 F.3d 1226, 1229 (Fed. Cir. 2004).  If a railroad and a prospective trail operator wish to consider using the railway corridor as a public trail, the Surface Transportation Board will issue a Notice of Interim Trail Use, or NITU, to block abandonment of the right-of-way under state law.  The Board retains jurisdiction of the corridor for possible future railroad use. *Caldwell*, 391 F.3d at 1229.

---

[1] Defendant also contests the property interests of two plaintiffs whose tracts abut a public road running between their lands and the right-of-way.  The road is owned in fee by the County.

The Trails Act forestalls legal abandonment of the corridor by the railroad so that the parties can negotiate its conversion to recreational purposes pursuant to federal law. This is the point at which the Court of Appeals for the Federal Circuit has found that a taking occurs if other facts apply. *See Caldwell*, 391 F.3d at 1229. Thus, the takings claim accrues when the NITU is issued. *Ladd*, 630 F.3d at 1023; *Caldwell*, 391 F.3d at 1235.

## FACTS

Plaintiffs are property owners along a 4.57-mile Railroad corridor in Ellis County, Texas. The corridor was used until 2003 by Union Pacific Railroad Company as successor to the Dallas & Waco Railway Company. The Railroad acquired rights to various sections of the corridor by deed, by prescription, and by condemnation, between 1887 and 1893.

The Railroad notified the Surface Transportation Board in November 2005, that it wished to abandon this stretch of line.[2] Two months later, the City of Waxahachie, Texas filed a request for issuance of a NITU, which the Board issued in February 2006. Thereafter, the city negotiated with the Railroad for acquisition of the corridor for use as a recreational trail. The Railroad and the City entered into a Donation and Purchase and Sale Agreement in October 2007, pursuant to the National Trails System Act, 16 U.S.C. § 1247(d).

All but two of the plaintiffs are fee simple owners to the center line of the Railroad corridor. These are the Boyce Feed and Grain Corporation, Hugh Hyatt, the Ray Hobratschk Investment Group #10, Ray Hobratschk as Trustee, and Shirley Peel.[3] The Government disputes the property interests of remaining plaintiffs Ernest Ybanez and Elaine Girard Faires.

## ARGUMENTS

Plaintiffs contend that trail use exceeds the scope of the easements granted to the Railroad under Texas law and that a taking occurred when the Surface Transportation Board issued the NITU. *See Caldwell*, 391 F.3d at 1229 ("A Fifth Amendment taking occurs if the original easement granted to the railroad under state property law is not broad enough to encompass a recreational trail."). The easements were for "railroad purposes," and while the Government may maintain control over railroad corridors through railbanking and trail making, those functions do not qualify as railroad purposes.

According to defendant, railbanking and interim trail use are within the scope of the

---

[2] The term "abandonment" as used here refers to the process by which a railroad seeks permission from the Board to cease providing service over the corridor for which the petition is filed. *See* 49 U.S.C. § 10903.

[3] Confusion among the parties whether Ray Hobratschk, Trustee and the Ray Hobratschk Investment Group #10 are separate entities does not affect the legal analysis described in this Opinion. That the Hobratschk property interest(s) in the Railroad corridor is/are held in fee simple is not disputed.

railroad-purpose easements granted originally, because they are part of a railroad's "maintenance" and preservation of its right-of-way.[4] It insists that plaintiffs' reliance on Federal Circuit precedent is misguided because none of those cases turned on Texas law.

The Federal Circuit has never accepted the argument that public recreational use of land and railbanking are within the scope of an easement for railroad purposes, according to plaintiffs. They point out that Texas law is consistent with the state laws that the Circuit has reviewed.

Defendant also claims that Ybanez and Faires do not have an underlying interest in the Railroad corridor because a road intervenes between their parcels and the Railroad right-of-way. The predecessor-in-interest of Ybanez and Faires granted the land for the road in fee to Ellis County, defendant believes. If the state or the county owns the land under the road in fee, Ybanez and Faires cannot maintain a reversionary interest to the center line of the abutting Railroad corridor.[5]

Plaintiffs claim that Ybanez and Faires have a fee simple interest to the center of the rail line despite the road that runs between their properties and the Railroad corridor. Their predecessor-in-interest granted only an easement to the County for use of the strip of land for a road, plaintiffs assert. Therefore, Ybanez and Faires maintain a fee simple interest in the land underlying the road abutting the Railroad corridor. The presumption under Texas law that an abutting landowner owns to the center line of a railroad right-of-way gives Ybanez and Faires a fee simple interest to the center line of the corridor, they explain.

## DISCUSSION

A. Legal Considerations

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c). When parties cross-move for summary judgment, we evaluate each motion according to the same standards. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987) ("[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.").

The Takings Clause of the Fifth Amendment provides that "private property [shall not]

---

[4] Language granting a right-of-way to the Railroad includes, for example, "with full and perfect right to locate, construct and forever *maintain* and use its said road and telegraph line over the above described lands" (emphasis added). Defendant believes this provision for maintenance permits trail use and railbanking. Notably, one category of deed utilized to convey easements to the Railroad did not use the word "maintain" in this or any context.

[5] The parties refer to the road variously as "county road," "state road," and "Highway 77." All such references in this Opinion are to the original conveyance in 1926.

be taken for public use, without just compensation." U.S. Const. Amend. V. Whether the Trails Act effects a taking in a particular case depends "upon the nature of the state-created property interest that petitioners would have enjoyed absent the federal action and upon the extent that the federal action burdened that interest." *Preseault v. ICC*, 494 U.S. 1, 24 (1990) (O'Connor, J., concurring). Only parties "with a valid property interest at the time of the taking are entitled to compensation." *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1212 (Fed. Cir. 2005) (quoting *Wyatt v. United States*, 271 F.3d 1090, 1096-97 (Fed. Cir. 2001)).

The Federal Circuit has made a clear statement of when a taking would accrue in Rails-to-Trails cases, and therefore when the statute of limitations would begin to run: "It is settled law that a Fifth Amendment taking occurs in Rails-to-Trails cases when government action destroys state-defined property rights by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement." *Ladd*, 630 F.3d at 1019. Thus, the taking occurs when the Surface Transportation Board issues the NITU, the first government action that affects property rights. *Caldwell*, 391 F.3d at 1233-34 ("The issuance of the NITU is the only *government* action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right-of-way.")

*Preseault v. United States* lists three questions for courts to consider initially in resolving Rails-to-Trails cases:

> (1) [W]ho owned the strips of land involved, specifically did the Railroad . . . acquire only easements, or did it obtain fee simple estates;
> (2) if the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails; and
> (3) even if the grants of the Railroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements.

*Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996).

If the railroad in a Rails-to-Trails case received only easements to support its corridor and no fee interests, and if recreational trail use would exceed the scope of the railroad's easements, a taking will have occurred. *Id.*; *Ladd*, 630 F.3d at 1019. The parties in this case stipulated that the Railroad's interest in the corridor was acquired as a series of easements rather than by conveyances in fee.[6] The scope of the easements is the next area of inquiry according to *Preseault v. United States*, to determine whether the easement contemplates trail use or

---

[6] The Railroad acquired its rights in the railway corridor through conveyances of easements by deeds, by court-ordered condemnation, and by prescription. These transfers of interests in real property were described by Union Pacific's predecessor in a 1918 filing with the Interstate Commerce Commission, obtained from the National Archives by the parties to this lawsuit.

railbanking as railroad purposes. We reach the third question only if the property interest in the railroad is an easement and its "railroad purpose" can reasonably include trail use. The crucial issue for determination of liability therefore is whether the Railroad's easements in this case can be interpreted to authorize recreational trail use.

B. Scope of Easements for Railroad Purposes under Texas Law

State law determines whether a plaintiff in a takings case has a compensable private property interest. *See Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Preseault v. ICC*, 494 U.S. at 24 (O'Connor, J., concurring). Texas courts have not ruled directly whether a trail could be within the scope of an easement for railroad purposes. Generally, however, a review of state real property law in Texas suggests that recreational trails for use by the general public would be beyond the scope of easements granted for railroad purposes, whether obtained by express deed, by condemnation, or by prescription.[7]

1. Condemnation

The Railroad obtained rights to two of the parcels of land supporting its corridor through a Texas state condemnation proceeding.[8] The condemnation statute in effect at the time provided, "[s]uch [railroad] corporation shall have the right to erect and maintain all necessary and convenient buildings and stations, fixtures and machinery for the accommodation and use of passengers, freights and business interests, or which may be necessary for the construction or operation of its railway." Tex. Rev. Civ. Stat. art. 4216 (1879).

Texas law presumes that railway corridors obtained through condemnation proceedings are easements and not fee interests. *See* Tex. Rev. Civ. Stat. art. 4206 (1879) (current version at Tex. Transp. Code Ann. § 112.055) ("The right of way secured by condemnation to any railway company in this State shall not be construed to include the fee simple estate in lands . . . ."). The applicable condemnation statute also limited a railroad's use of its right-of-way: "[N]or shall they use, occupy, or cultivate any part of the right of way over which their respective roads may pass . . . for any other purpose than the construction and keeping in repair their respective railways." Tex. Rev. Civ. Stat. art. 4216.

The fee estate remains in abutting landowners when parts of their lands are condemned for railroad purposes. *Chicago, R. I. & G. Ry. Co. v. Clark*, 146 S.W. 989, 991 (Tex. Civ. App. 1912). Lands condemned for a particular purpose cannot be appropriated for a different use. *Id.* at 992.

---

[7] Circumstances do not permit certification of this question to the Texas Supreme Court. *See* Rule 58.1, Texas Rules of Appellate Procedure. Therefore, "it is the duty of this court to approximate the law of the state from decisions of its highest court as best it can." *Estate of German v. United States*, 7 Cl. Ct. 641, 646 (1985).

[8] NARA Map 19, Parcels 1 and 2, *see* Plaintiffs' Exhibit L.

The Government argues that railbanking and interim trail use are permissible uses of an easement obtained by condemnation. The condemnation statute allowed a railroad to "maintain" the corridor for future construction or operation of the railway. The Court of Appeals for the Federal Circuit has rejected this reasoning in its consideration of other state property laws. *Preseault v. United States*, 100 F.3d at 1547 ("The fact that restoration of [a] portion of the line would be technically feasible tells us little. The question is not what is technically possible to do in the future, but what was done in the past.").

Defendant also argues that railbanking and trail use are within the "public use" contemplated by the Texas condemnation statute. The Texas condemnation statute contemplates that an easement may be condemned in Texas solely for the active use of a railroad. Trail use and railbanking fall outside the explicit terms of the condemnation statute.

2. Prescription

The Railroad acquired rights to a portion of its right-of-way by prescription.[9] Texas law limits an easement obtained by prescription to the use to which the easement-holder put the property during the prescriptive period. *See Galveston, H. & S. A. Ry. Co. v. McIver*, 245 S.W. 463, 463-64 (Tex. Civ. App. 1922). A railroad that uses a strip of land for railroad operations only, as if it had condemned the land for railway use, cannot acquire more than an easement for railroad purposes. *See id.* As with an easement obtained by condemnation, interim recreational trail use and railbanking are outside of the scope of an easement obtained by prescription for railroad operations.

3. Private Conveyances

The Railroad acquired rights to the remaining tracts of land by private conveyances of easements. The granting clause must recite conveyance of a "tract, parcel, or strip of land" to effect a transfer of fee. *Texas Electric Ry. Co. v. Neale*, 252 S.W.2d 451, 453 (Tex. 1952) (citing *Brightwell v. International-Great Northern R.R. Co.*, 49 S.W.2d 437 (Tex. 1932)*; Right of Way Oil Co. v. Gladys Oil, Gas & Mfg. Co.*, 157 S.W. 737 (Tex. 1913); *Calcasieu Lumber Co. v. Harris*, 13 S.W. 453 (Tex. 1890)). A deed granting a "right of way over" certain lands conveys only an easement in Texas.

The parties stipulated that conveyances to the Railroad contained "right of way language" that created easements rather than fee titles. The conveyances were of three types that are described below according to their granting clauses – as Category I, Category II, and Category III.

The Railroad acquired rights to three parcels of land in Category I, by similar deeds; the

---

[9] NARA Map S19, Parcel 27, *see* Plaintiffs' Exhibit L.

granting clauses of the Category I deeds contain identical language:[10]

> [I] grant sale [sic] and convey and relinquish unto the said Dallas & Waco Railway Company its successors and assigns forever the right of way one hundred feet wide on or over the most recently staked routes for said road through and over [my] lands in Ellis County Texas . . . with full and perfect right to locate, construct and forever maintain and use its said road and telegraph line over the above described lands.

The Railroad acquired rights to one parcel[11] by a deed from Category 2, containing the following language in the granting clause:

> [We] grant, bargain, sell, convey and relinquish unto the said the Dallas & Waco Railway Company the right of way over our lands situated in the County of Ellis, State of Texas . . . the said right of way to extend fifty feet in width on each side of the Center of the track of said Railway, together with the use of the wood, water, stone, gravel and other material and privileges useful in the Construction and maintenance of said Railway pertaining to the land so granted and conveyed.

Category 3 is a group of three deeds that convey easements to the Railroad.[12] These deeds contain the following granting clause:

> [I/We] grant and convey to the Dallas and Waco Railway Company, the right of way over, across and upon the following described tract of land belonging to [me/us] and lying in Ellis county Texas . . . with the right to take and use the dirt, gravel, wood, stone and timbers on, in and upon said strip.

The Texas Supreme Court's interpretation of easements determines whether plaintiffs have a takings case because state law controls most issues related to real property. These include not only the legal requirements for conveying fee simple title, but also the construction of

---

[10] NARA Map S19, Parcels 24 and 26 and Map 19, Parcel 5. The relevant deeds were from John Solon (Deed Vol. 48, p. 102), B.G. Connor (Deed Vol. 48, p. 111) and J.C. Fears (Deed Vol. 48, p. 113). *See* Plaintiffs' Exhibits L, P, O, and S.

[11] NARA Map 19, Parcel 9. This deed was from T.H. Yarbrough, et al. May 23, 1887. *See* Plaintiffs' Exhibits L and Q.

[12] NARA Map 20, Parcels 2 and 3 and Map 19, Parcel 4. These easements were deeded by R.V.B. Sweatt, A.P. Harbin and D.B. Bullard in July 1887. *See* Ellis County Recorder of Deeds at Book 48 pages 130, 136, and 140, and *see* Plaintiffs' Exhibits L, M, N, and T.

easements to assess the breadth of their scope. The Supreme Court of Texas described the general rules for interpreting express easements in *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697 (Tex. 2002). ("We apply basic principles of contract construction and interpretation when considering an express easement's terms.") The scope of the interest conveyed is determined by interpreting the language of the grant to give effect to contracting parties' intentions. *Id.* at 700-01. The terms of the grant "should be given their plain, ordinary, and generally accepted meaning, [which terms] delineate the purposes for which the easement holder may use the property." *Id.* at 701. "Nothing passes by implication 'except what is reasonably necessary' to fairly enjoy the rights expressly granted." *Id.* (quoting *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex. 1974). Where "a particular purpose is not provided for in the grant, a use pursuing that purpose is not allowed." *Id.*

Plaintiffs' interpretation of Texas case law calls for narrow construction of easements with regard to scope. They state that Texas property law is clear on the issue of scope, and that trail use and railbanking are well beyond the permissible use of a railroad easement. For example, in *Marcus Cable*, the Texas Supreme Court held that an easement for a power line could not be expanded to include the additional burden of cable lines strung on power company towers. 90 S.W.3d at 707-08. The Texas Court of Appeals construed narrowly the grant of a railroad right-of-way to prohibit a rail yard on the easement. *Missouri K. & T. Ry. v. Anderson*, 81 S.W. 781, 785-86 (Tex. App. 1904). The *Anderson* court determined that "a grant of right-of-way . . . authorized" the railroad only to locate its "line of road, together with such side tracks as may be necessary to the operation of the same." *Id.* at 785. A dispute arose in another Texas Court of Appeals case regarding the scope of an express easement; the easement at issue was for use of "the railroad switch track and grounds." *Kearney & Son v. Fancher*, 401 S.W.2d 897, 903 (Tex. App. 1966). The court found that the easement terminated when it was no longer possible to bring railroad cars onto the switch track at issue.

The Government responds that trail use and railbanking are permissible uses under the various categories of railroad-purpose easements, noting that the deeds, like the condemnation statute discussed above, provide for "maintenance" of the corridor. Railbanking is maintaining the right-of-way for future use, defendant claims. Defendant cites a case from this Circuit that considers railbanking to be a permissible use of railroad easements. *See Chevy Chase Land Co. v. United States*, 230 F.3d 1375, 1999 WL 1289099 (Fed. Cir. 1999) (following certified questions of state law to the Maryland Supreme Court). That case analyzes an easement that is broader by its language than the easements at issue here, however. *Id.* at *2 ("[T]he easement is not limited in scope to railroad purposes.").

Defendant cites a Texas case that addresses the evolution of easements, apparently implying a view open to a broader interpretation of scope:

> The creation of such an interest as an easement involves looking forward by those participating in its creation, to a future use by the one entitled to it, not inconsistent with, or repugnant to, the creating instrument. This use, by necessity, must be made under conditions somewhat different from those existing at the time of

9

> the conveyance. In the absence of language specifically negativing it, it will be assumed that the parties contemplated changes in the use of the servient tenement by the normal development in the use of the dominant tenement.

*Knox v. Pioneer Natural Gas Co.*, 321 S.W.2d 596, 600 (Tex. Civ. App. 1959) (citing Restatement of the Law of Property, §§ 482 and 484).

The easements conveyed in this case limited the right-of-way to railroad-purpose use. The original parties to railroad conveyances between 1887 and 1891 would not likely have contemplated use of the right-of-way as a recreational trail. Such a use would be "clearly different" from railway operations. *Preseault v. United States*, 100 F.3d at 1542. Moreover, public use of the land as a trail or for similar recreational activities would be "inconsistent with, [and] repugnant to, the creating instrument[s]." *Knox*, 321 S.W.2d at 600.

The language of the deeds in all three categories above, provides for construction of a railway, and for the use of materials on the right-of-way such as wood, water, and stone. Trail use and railbanking do not fall within permissible uses for these railroad-purpose easements in Texas. Conversion of the right-of-way to public use by operation of the Trails Act imposed a new easement on the servient estates, and effected a Fifth Amendment taking of plaintiffs' property.

    C. Ybanez and Faires Properties; the "Ransom Deed"

The Ybanez and Faires properties are unique among the lands belonging to plaintiffs in this case: a public road separates their lands from the Railroad right-of-way. The remaining plaintiffs enjoy the same legal status; their property runs to the boundary of the Railroad corridor.

Mrs. C.J. Ransom once owned the land that has become the property of Ybanez and Faires. She conveyed an interest in the property to Ellis County for the road in 1926. Texas law provides that "a deed to land abutting on a railroad right-of-way conveys title to the center of the right-of-way unless a contrary intention is expressed in the instrument."[13] *Angelo v. Biscamp*, 441 S.W.2d 524, 526 (Tex. 1969) (noting that the rule is "well-established" in Texas). By application of the Texas Rule, if Mrs. Ransom conveyed the right-of-way to the County in fee, the County – and not Ybanez and Faires – would hold the underlying reversionary interest to the middle of the Railroad corridor. If she conveyed the land for the road as an easement, Ybanez and Faires would maintain an interest in the land under the road to the center of the Railroad right-of-way. Plaintiffs contend that the deed to the County granted an easement for

---

[13] A conveyance to land abutting a railroad corridor is presumed to "carry with it the appurtenant easements and incidents belonging to the property at the time of the conveyance." *Angelo*, 441 S.W.2d at 526 (citing *Rio Bravo Oil Co. v. Weed*, 50 S.W.2d 1080 (Tex. 1932)).

the road, while defendant asserts that the deed grants the strip of land in fee.

The Ransom deed contains the caption or heading "RIGHT-OF-WAY EASEMENT." The granting clause does not refer to a right-of-way or an easement, however, but states:

> I, Mrs. C.J. Ransom, by A.M. Browning, Agent, of the County of Ellis, State of Texas, for and in consideration of the sum of $376.96 Dollars to ___ [sic] in hand paid by Ellis County, have Granted, Sold and Conveyed, and by these presents to Grant, Sell and Convey unto the said Ellis County, all that certain lot, tract, or parcel of land to be used for Highway or other purposes . . . .

A metes and bounds description includes the following: "Beginning at the point on the west right of way line . . . . Thence with said right of way line . . . to N.E. Graston's north line."

There were numerous conveyances over the years, and the Ransom tract was subdivided into what is now the Ybanez and Faires parcels.

Defendant highlights language in the Ybanez and Faires deeds that describes their properties as bordering "along the west line of said U.S. Highway 77 . . ." in the case of Ybanez, and "along the westerly line of U.S. Highway 77 . . ." in Faires' deed. These references to the edge of the road as a boundary mean that the deeds do not include the Railroad corridor, according to defendant.[14] The Government asserts that Mrs. Ransom conveyed land for the road in fee, so plaintiffs' interest extends only to the highway that separates them from the Railroad corridor. Plaintiffs argue that the road is merely an additional easement across their land that does not affect their interest in the Railroad right-of-way.

When interpreting a conveyance in Texas or determining the scope of an easement, courts often look to the entire instrument to determine the intent of the parties. *Kearney & Son*, 401 S.W.2d at 903 ("[I]n arriving at the intention, all provisions of the instrument will be considered and given effect if possible from a fair construction of the entire instrument, considering the effect of the various paragraphs on each other."). Plaintiffs prefer this rule of construction to the more traditional emphasis on the granting clause; they urge that the court should view the Ransom deed as a whole, including the caption.[15]

Plaintiffs also cited *Missouri K. & T.*, 81 S.W. at 786, where the court interpreted an express easement to determine whether a rail yard could be constructed on a railroad easement.

---

[14] The Supreme Court of Texas has explained that the presumption of an intent to convey title to the center of a railroad corridor is not overcome by a metes and bounds description or that stated distances do not extend to the center of the right-of-way. *Rio Bravo*, 50 S.W.2d at 1084. However, that rule does not help plaintiffs here because logically it applies only to landowners who own the land abutting the railroad in fee.

[15] The caption or heading at the top of the Ransom deed is "Right-of-Way Easement."

The court reasoned, "when the terms of the grant that are employed to express the supposed intention of the parties are ambiguous, or of doubtful meaning or application, . . . the construction placed upon the contract by the parties . . . may also be looked to." *Id.*

Plaintiffs argue that because the Ransom deed contains the caption, "Right-of-Way Easement" and twice uses "right of way" in the description portion of the instrument, it conveys only an easement. They also point out that language in the granting clause specifying the intended use of the right-of-way "for Highway or other purposes," would be superfluous if the conveyance had been intended as a fee simple transfer. These provide evidence of intent to grant an easement only, plaintiffs urge.[16]

Defendant argues that the rule from *Hidalgo County v. Pate* controls. 443 S.W.2d 80 (Tex. Civ. App. 1969). In that case, the Texas Court of Appeals stated, "[t]he granting clause determines the interest conveyed, and unless there be a repugnancy, obscurity or ambiguity in that clause, it prevails over introductory statements or recitals in conflict therewith." *Id.* at 84. The Texas Court of Appeals in *Hidalgo* found that a deed to a county for a road granted a fee simple rather than an easement where the words "right of way" appeared only in the subsequent description portion of the grant and were absent from the granting clause which "Granted, Sold and Conveyed . . . all that certain tract or parcel of land . . . ." *Id.* at 85-86.

Defendant also cites a Texas Supreme Court case *Texas Electric Railway Co. v. Neale*, 252 S.W.2d 451 (Tex. 1952). In that case, where the granting clause did not contain language granting a "right of way," the court found that the land was issued in fee. *Id.* at 458 (comparing *Right of Way Oil Co.*, 157 S.W. 737 (holding that a deed which by the terms of the granting clause grants, sells and conveys to the grantee a "right of way" in or over a tract of land conveys only an easement) with *Calcasieu Lumber Co.*, 13 S.W. 453 (holding that a deed which in the granting clause grants, sells and conveys a tract or strip of land conveys the title in fee, even though a subsequent clause or paragraph of the deed refers to the land conveyed as a right of way)).

The Texas Supreme Court seemed to accept the premise that the granting clause controls in this context, reasoning that "a deed which in the granting clause grants, sells and conveys a tract or strip of land conveys the title in fee, even though in a subsequent clause or paragraph of the deed the land conveyed is referred to as a right of way." *Id.* at 453. Words that show the purpose for which a grant is made "do not undertake to reduce or debase what has been granted from a fee title to a mere easement." *Id.* at 454.

---

[16] Plaintiffs also directed our attention to a recent Rails-to-Trails case from this court, *Macy Elevator, Inc. v. United States*, No. 09-5151, 2011 WL 1319026 (Fed. Cl. Apr. 7, 2011). In that case, plaintiffs were found to have an interest in a railroad corridor despite the existence of a road separating their properties from a railroad right-of-way. This decision is based on the law in Indiana, where "the owner of property whereon a public highway lies holds the property in fee, subject only to the public's easement." *Lake County Trust Co. v. Lane*, 478 N.E.2d 684, 688 (Ind. Ct. App. 1985).

Defendant argues that the Ransom deed conveys a fee simple interest to the county based on the clear language of the granting clause. The granting clause contains similar language to the granting clause in the *Hidalgo* case: "That I, Mrs. C.J. Ransom . . . have Granted, Sold and Conveyed, and by these presents do Grant Sell and Convey unto the said Ellis County, all that certain lot, tract, or parcel of land . . . ." This denotes a fee simple transfer, the Government claims, asserting that the "Right-of-Way Easement" caption is irrelevant where the granting clause is unambiguous in its intent to convey the strip of land in fee.

The rule plaintiffs emphasize – a "four corners" approach in which meaning is given to every part of the instrument – is provided by the Texas courts in the context of interpreting an unambiguous instrument, most often the scope of an express easement. The issue presented by the Ransom deed is not whether as an easement its scope is sufficient to authorize subsequent use as a trail; the issue is whether in fact it is an easement or whether it is a fee title. The caption across the top reads "Right-of-Way Easement," while the granting clause contains no such limiting language.

*Hidalgo* was a case in which the court was faced with the same question we are addressing – whether the conveyance at issue created an easement or a fee simple title. The granting clause in the Ransom deed fits squarely within the definition of a fee simple grant as discussed in *Hidalgo* and *Texas Electric*. Rather than granting "a right of way over" a parcel of land, the Ransom deed "grant[s,] sell[s,] and convey[s] . . . all that certain lot tract, or parcel of land to be used for Highway or other purposes."

Plaintiffs point out that language describing the intended use of the Ransom conveyance would be superfluous if the conveyance had been intended as a fee simple transfer and is therefore evidence of intent to grant a mere easement. The Texas Supreme Court has stated that words that show purpose do not reduce the grant from a fee to an easement. *See Texas Elec. Ry. Co.,* 252 S.W.2d at 454. While the Texas cases cited did not have a caption referring to a right-of-way easement, the granting clause does not contain a "repugnancy, obscurity or ambiguity." *Hidalgo,* 443 S.W.2d at 84. Therefore, we are not required by Texas law to look to the language in the caption for guidance in determining the interest conveyed.[17]

---

[17] We do not imply that the law in Texas is entirely clear in this area, where the tension is between the traditional Common Law approach whereby the granting clause is the sole factor in determining whether a grant is in fee simple or a lesser estate, and the more modern view that deeds should be construed as contracts are. For example, the *Hidalgo* court cites a Texas Supreme Court case, *Brightwell,* 49 S.W.2d 437, and a Texas Court of Appeals case, *Gulf Coast Water Co. v. Hamman Exploration Co.*, 160 S.W.2d 92 (Tex. Civ. App. 1942), for the proposition that the granting clause controls. Neither case announces such a clear rule.

In *Brightwell*, the Supreme Court of Texas found that fee simple resulted where the granting clause grants, sells, and conveys a tract of land – yet the court did not describe the rules of construction it employed to reach its conclusion, let alone announce a strict rule that the granting clause always controls. 49 S.W.2d 437. The court in *Gulf Coast Water* found that the conveyance was an easement based on language in the granting clause, but it analyzed other aspects of the grant, such as reservation of the right to fence, which would have been incompatible with a grant of fee

## CONCLUSION

(1) *Who owned the strips of land involved? Did the Railroad acquire only easements, or did it obtain fee simple estates?* The Railroad acquired easements only. Plaintiffs owned the land under the Railroad corridor in fee. *See Preseault v. United States*, 100 F.3d at 1533.

(2) *If the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails? If the Railroad's easements were broad enough to encompass recreational trails, had the easements terminated prior to the alleged taking so that the property owners at that time held fee simple title unencumbered by the easements?* The easements' scope was not broad enough to include future use as public recreational trails. The relatively narrow scope of the easements is determinative of takings liability in this case. Therefore, we do not reach the issue of whether the Railroad abandoned the right-of-way under state law before issuance of the NITU. *See id.*

The easements' scope was not sufficiently broad to accommodate a public trail or railbanking. For that reason, conversion of the right-of-way to public use by operation of the Trails Act imposed a new easement on the servient estates, and effected a Fifth Amendment taking of plaintiffs' property. Scope is not a factor with regard to the Ransom deed or for plaintiffs Ybanez and Faires because the Ransom deed conveyed land for Highway 77 in fee simple. The fee simple interest in the road bed separates plaintiffs' land from the Railroad corridor, and cuts off all rights of Ybanez and Faires to potential reversionary interests in the corridor.

Plaintiffs' motion for summary judgment on the issue of liability as to plaintiffs Hyatt, Peel, Hobratschk, and Boyce Feed is GRANTED. The motion as to plaintiffs Ybanez and Faires is DENIED. Defendant's motion for summary judgment as to plaintiffs Hyatt, Peel, Hobratschk, and Boyce Feed is DENIED; its motion as to Ybanez and Faires is GRANTED. The parties will advise the court of a time to discuss how to proceed on the matter of just compensation, no later than June 1.

s/ Robert H. Hodges, Jr.
Robert H. Hodges, Jr.
Judge

---

simple. 160 S.W.2d at 94-95.
    Had we applied the more modern "entire instrument" approach to discerning the parties' intent, however, the ruling on the Ransom deed would have been the same. Giving effect to the entire instrument, including its captions, we concluded that the Ransom deed conveyed a fee simple interest in the road to the County. The word "easement" appears only in the captions; a right-of-way can be a transfer in fee as well as an easement. We did not view the captions as being reliable indicators of intent, given the language of the granting clause and the deed as a whole.