# In the United States Court of Federal Claims

No. 09-172L
Filed: December 5, 2011

* * * * * * *

| | | |
|---|---|---|
| ERNEST YBANEZ, et al., | * | Rails-to-Trails Act; Fifth Amendment Takings Clause; Surface Transportation Board; Application of State Property Law; RCFC 56(c) Cross-motions for Summary Judgment; National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d); Texas Law; Methodology for Determining Just Compensation |
| Plaintiffs, | * | |
| v. | * | |
| THE UNITED STATES OF AMERICA, | * | |
| Defendant. | * | |

* * * * * * *

*Steven M. Wald* and *Brent W. Baldwin*, Baker Sterchi Cowden & Rice, St. Louis, MO, for plaintiffs.

*Jessica M. Held*, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**

**HODGES**, Judge.

Plaintiffs own property along a 4.57-mile railroad corridor in Ellis County, Texas. Union Pacific Railroad used the corridor for rail traffic until 2003. On November 17, 2005, the Railroad filed a Notice of Exemption with the Surface Transportation Board, pursuant to the National Trails System Act Amendments of 1983, 16 U.S.C. § 1274 (d). In accordance with that Act, the City of Waxahachie, Texas, filed a request for issuance of a Notice of Interim Trail Use (NITU) in February 2006. The Surface Transportation Board issued the NITU as requested. Thereafter, the Union Pacific and the City of Waxahachie negotiated a Donation and Purchase and Sale Agreement pursuant to the Trails Act.

The agreement transferred rights to the corridor to the City for use as a public recreational trail. We found the Government liable for a Fifth Amendment taking of plaintiffs' property under the National Trails System Act Amendments of 1983, the Trails Act. *See Ybanez v. United States*, 98 Fed. Cl. 659, 671 (2011). Now the parties dispute the appropriate measure of just compensation due plaintiffs. Defendant and plaintiffs have filed cross-motions for partial summary judgment on the means of calculating damages.

Plaintiffs contend that the proper measure of compensation is the difference between values of their estates with railroad easements on them, and values with no easements or other hindrances. According to the Government, the railroad had not abandoned its easement before the NITU was issued; therefore, the railroad easement continued to burden plaintiffs' property when the taking occurred. The proper measure of damages under defendant's theory would be the difference between the value of plaintiffs' property encumbered by a railroad easement and property encumbered by an easement for recreational trail use. We grant plaintiffs' motion for the reasons discussed below.

## BACKGROUND

The Trails Act has been found to create a Fifth Amendment taking in some circumstances.[1] A taking may occur pursuant to the Trails Act when "state law reversionary interests are effectively eliminated in connection with a conversion of a railroad right-of-way to trail use." *Caldwell v. United States*, 391 F.3d 1226, 1228 (Fed. Cir. 2004).

Section 8(d) of the Trails Act is the source of the Government's liability for Fifth Amendment takings. *See* 16 U.S.C. § 1274 (d). That section prevents state-law abandonment of railroad rights-of-way and the subsequent vesting of reversionary rights in abutting landowners.[2] *Id.* at 1229. A taking may occur when the Government steps in pursuant to the Trails Act to prevent or delay such landowners from obtaining rights to the lands in dispute. Government involvement begins with issuance of a Notice of Interim Trail Use by the Surface Transportation Board. The effect of the NITU is to prevent the lands from returning to owners of the servient estates when the easements are abandoned or otherwise do not comply with the uses for which they were granted. The Court of Appeals for the Federal Circuit has held that the interest taken in such circumstances is the landowners' "possession of their property unencumbered by the easement." *Ladd v. United States*, 630 F.3d 1015, 1023 (Fed. Cir. 2010); *see also Caldwell*, 391 F.3d at 1233 ("The issuance of the NITU is the only *government* action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right-of-way.").

The appeals court offered a three-factor test for trial courts to consider in deciding whether a Trails Act taking occurred.

> (1) . . . [D]id the Railroad . . . acquire only easements [across plaintiffs' property], or did it obtain fee simple estates;

---

[1] The Takings Clause of the Fifth Amendment to the Constitution states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V.

[2] That is, landowners whose chain of title includes a grant of easement or right-of-way to the railroad could be entitled to a reversionary interest in the railroad corridor if or when the easement's use no longer complies with its original grant. Most courts have held that use of the corridor as a public trail does not comply with such an easement's original purpose. The Government's issuance of a NITU, however, puts all possibility of a reversion on hold.

(2) if the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails; and

(3) even if the grants of the Railroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements.

*Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (*Preseault II*).

The railroad acquired only an easement in its corridor in most cases, and the easements were not broad enough to encompass use as recreational trails. Thus, "[c]onversion of the right-of-way to public use by operation of the Trails Act imposed a new easement on the servient estates, and effected a Fifth Amendment taking of plaintiffs' property." *Ybanez*, 98 Fed. Cl. at 668.[3] The legal issue remaining is calculation of plaintiffs' damages to insure that they obtain just compensation from the United States as required by the Fifth Amendment.

## DISCUSSION

Plaintiffs argue that the appropriate measure of just compensation for the taking is the difference in value between their ownership of an unencumbered fee title and a fee encumbered by an easement for public trail use for the indefinite future. They explain that plaintiffs' rights to enjoy their property unencumbered were taken when the Surface Transportation Board issued the NITU that allowed a new easement on their land – the new easement being one that exceeded the scope of the original railroad easement. *Ladd*, 630 F.3d at 1023. But for the NITU, plaintiffs contend, they would have enjoyed their land unencumbered. *See Preseault v. I.C.C.*, 494 U.S. 1, 21 (1990) (*Preseault I*) (O'Connor, J., concurring) ("Determining what interest petitioners would have enjoyed under [state] law, in the absence of the [Government's] recent actions, will establish whether petitioners possess the predicate property interest that must underlie any takings claim.").

According to the Government, the proper measure of damages for a taking is the difference between the value of the plaintiffs' property encumbered by the railroad easement and the value of the property encumbered by an easement for recreational trail use. A "takings claim accrues on the date that a NITU issues, [so] events arising after that date – including entering into a trail use agreement and converting the railway to a recreational trail – cannot be necessary elements of the claim." *Ladd*, 630 F.3d at 1024. Because Union Pacific had not abandoned the railroad easement under Texas state law before the NITU was issued, the railroad easement continued to burden plaintiffs' property at the time of the taking, defendant argues. Therefore, the United States is liable to plaintiffs only for the difference between the initial burden the railroad easement placed on the property and the burden imposed by public recreational trail use.

---

[3]The Government was liable for a taking as to plaintiffs Hyatt, Peel, Hobratschk, and Boyce Feed. No taking occurred with respect to plaintiffs Ybanez and Faires because a public road between their land and the Railroad corridor cut off those plaintiffs' potential reversionary interests in the railroad right-of-way.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  RCFC 56(c).  A cross-motion for summary judgment calls upon the court to consider the motion of each party according to the same standards.  *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987).

The "guiding principle of just compensation is reimbursement to the owner for the property interest taken."  *United States v. Va. Elec. & Power Co.*, 365 U.S. 624, 633 (1961).  In a rails-to-trails case "the existence of a taking will rest upon the nature of the state-created property interest that petitioners would have enjoyed absent the federal action and upon the extent that the federal action burdened that interest."  *Preseault I*, 494 U.S. at 24 (O'Connor, J., concurring).

A taking occurs when an action under the Trails Act blocks state reversionary interests under state law.  *Ladd*, 630 F.3d at 1023.  The issuance of a NITU serves to block state law abandonment and subsequent state law reversionary rights.  *See Caldwell*, 391 F.3d at 1233 ("[T]his occurs when the railroad and trail operator communicate to the [Surface Transportation Board] their intention to negotiate a trail use agreement and the agency issues an NITU that operates to preclude abandonment under section 8(d)." (citing *Preseault II*, 100 F.3d at 1543)); *see also Preseault II*, 100 F.3d at 1533 (outlining the three-step test for analysis of a takings claim under the Trails Act).

The Government's argument relies on the proposition that plaintiffs' property interests at the time of the taking are controlled by whether abandonment occurred prior to the NITU.  Defendant contends that the railroad easement was not abandoned at the time the NITU was issued.  Plaintiff maintains that Union Pacific had abandoned its interest in the rail corridor prior to the NITU.

Abandonment of an easement in Texas occurs "when the use for which property is dedicated becomes impossible . . . or where the object of the use for which the property is dedicated wholly fails."  *Adams v. Rowles*, 228 S.W.2d 849, 852 (Tex. 1950) (quoting *Griffith v. Allison*, 96 S.W.2d 74, 77 (Tex. Comm'n App. 1936).[4]  Intent is the key to determining abandonment under Texas law.  *Dallas County v. Miller*, 166 S.W.2d 922, 924 (Tex. Comm'n App. 1942).  Abandonment "may be established, like any other fact, by circumstances, yet those circumstances must disclose some definite act showing an intention to abandon and terminate the right possessed by the easement owner."[5]  *Dallas County*, 166 S.W.2d at 924.  Intent to abandon

---

[4]*See also Shaw v. Williams*, 332 S.W.2d 797, 800 (Tex. Civ. App. 1960) ("[A]n easement granted for a particular purpose terminates as soon as such purpose ceases to exist, is abandoned, or is rendered impossible of accomplishment." (quoting 28 C.J.S. Easements § 54, p. 718)).

[5]Mere nonuse of an easement does not constitute an abandonment unless the nonuse is accompanied by clear and definite circumstances proving intent.  31A Tex.Jur.3d Easements § 74; *see also Toal v. Smith*, 54 S.W.3d 431, 437 (Tex. App. 2001) ("Abandonment of an easement will *not* result from non-use alone; instead the 'circumstances must disclose some definite act showing

an easement must be shown by "clear and satisfactory evidence." *San Jacinto Sand Co. v. Sw. Bell Tel. Co.*, 426 S.W.2d 338, 344 (Tex. Civ. App. 1968).

Union Pacific certified in a Notice of Exemption, filed in November 2005, that no local traffic had traveled over its Line for at least two years. The railroad stated that it "intend[ed] to abandon the Line from Milepost 798.03 near Waxahachie to Milepost 802.60 near Nena." The Railroad saw "no reasonable alternative to the abandonment"and was "of the opinion that the proposed abandonment would be beneficial to [Union Pacific]." These statements in the Notice of Exemption represent a clear manifestation of Union Pacific's intent to abandon the railroad easement.[6]  *See Anna F. Nordhus Family Trust v. United States*, 98 Fed. Cl. 331, 337-38 (2011) (finding that identical statements made by Union Pacific in a Notice of Exemption in a Kansas case "are clear evidence of the railroad's intent to abandon its easements" under Kansas law); *see also Dana R. Hodges Trust v. United States*, No. 09-289, 2011 WL 5042383, at *10 (Fed. Cl. Oct. 25, 2011) ("The railroad had not merely abandoned the railway itself, but, more significantly, it had 'manifested an intent to abandon the underlying easement' for railway purposes when it sought ICC permission to abandon.") (applying Michigan law).

Termination of railroad activity over the right-of-way, together with Union Pacific's clear statements of intent to abandon the line, effectuate an abandonment of the easement under Texas law as of November 17, 2005. *See Glosemeyer v. United States*, 45 Fed. Cl. 771, 771 (2011) (finding under an analogous Missouri law that "an easement for a railroad right-of-way is extinguished when the railroad ceases to run trains over the land. The test for abandonment of an easement under Missouri law is therefore, non-use of the easement accompanied by conduct indicating an intention to abandon." (quoting *Kansas City Area Transp. Auth. v. 4550 Main Assoc., Inc.*, 742 S.W.2d 182, 189 (Mo.Ct.App. 1986)); *see also Nordhus Family Trust*, 98 Fed. Cl. at 338 (2011) (citing *Glosemeyer* and noting that "[t]he same outcome would be reached under Kansas law."). Plaintiffs' land was not burdened by the railroad easement when defendant issued the NITU.

---

an intention to abandon and terminate the right possessed by the easement owner.'") (quoting *Dallas County*, 166 S.W.2d at 924).

[6]Defendant disputes the view that these statements provide clear and satisfactory evidence of Union Pacific's intent. Union Pacific was not necessarily seeking to abandon the railroad, but seeking permission to cease rail service over the corridor, defendant claims. However, defendant's argument imposes requirements beyond those found in Texas law. State law in Texas does not mandate physical abandonment or a grant of permission to abandon; abandonment occurs where the "object of use" fails and evidence of intent to abandon is shown. *Adams*, 228 S.W.2d at 852; *see also Dallas County,* 166 S.W.2d at 924. In this case the object of use was as a rail corridor. When rail traffic ceased to run across the easement, the object of use for which it was dedicated wholly failed. *See City of Port Isabel v. Mo. Pac. R.R. Co.*, 729 S.W.2d 939, 945 (Tex. App. 1987) (finding abandonment where a limited-use easement for railroad purposes had not been used for many years and the tracks had been destroyed); *see also Kearney & Son v. Fancher,* 401 S.W.2d 897, 907 (Tex. Civ. App. 1966) (determining that a limited-use railroad easement was abandoned where it was no longer possible to move rail cars onto a switch track).

Even if Union Pacific had not abandoned the easement prior to the issuance of the NITU, the interest taken from plaintiffs would have been unencumbered land. The determination of what was taken from plaintiffs turns not on the status of the land at the time of the NITU but what interest plaintiffs would have had in the absence of the NITU. *See Raulerson v. United States*, 99 Fed. Cl. 9, 12 (2011) ("Contrary to defendant's position, the extent of the taking depends not on plaintiffs' property interests at the time of the NITU, but rather 'upon the nature of the state-created property interest that petitioners *would have enjoyed* absent the federal action and upon the extent that the federal action burdened that interest.'") (quoting *Nordhus Family Trust*, 98 Fed. Cl. at 336).

But for the NITU and subsequent trail use agreement, plaintiffs would have had fee title to their land unburdened by the railroad easement. This view is consistent not only with recent decisions of this court, but also with Federal Circuit precedent. *See Ladd*, 630 F.3d at 1023; *Barclay v. United States*, 443 F.3d 1368, 1373 (Fed. Cir. 2006); *Caldwell*, 391 F.3d at 1233. Where the scope of a new easement exceeds the original grant, a determination of whether abandonment occurs is unnecessary. *See Preseault II*, 100 F.3d at 1533; *see also Toews v. United States*, 376 F.3d 1371, 1381 (Fed. Cir. 2004) (declining to decide state law abandonment after finding a taking where the scope of a new easement exceeded the original railroad grant). Plaintiffs need not prove state law abandonment to recover for a compensable taking. *See Raulerson*, 99 Fed. Cl. at 13*; see also Rogers v. United States*, No. 10-200L, 2011 WL 5154550, at *6 (Fed. Cl. Oct. 31, 2011) ("Because the taking was the blocking of the 'abandonment' which would have occurred under [the deed] by operation of the Trails Act, Plaintiffs need not demonstrate that a state law abandonment occurred in order to either establish a taking or to prove the nature of their property interest prior to the NITU.")

## CONCLUSION

This court held that the Government's Notice of Interim Trail Use allowed a use by the general public that exceeded the scope of the grant of easements to Union Pacific. This resulted in a taking of plaintiffs' reversionary rights in the property. Union Pacific abandoned its easements before defendant issued the NITU, but the timing of abandonment is irrelevant in this case. Plaintiffs' compensatory taking resulted from the NITU's grant of a use that exceeds the scope of the original easements. But for the NITU, plaintiffs who had property interests in the corridor would be enjoying their land unburdened.

The measure of just compensation is the difference between the value of plaintiffs' land unencumbered by a railroad easement, and the value of plaintiffs' land encumbered by a perpetual easement for recreational trail use. Plaintiffs' motion for partial summary judgment is GRANTED. Defendant's motion for partial summary judgment is DENIED.

The parties should retain experts as soon as possible if they have not already, and should make every effort to agree on joint appraisals of the property. These appraisals will determine awards of just compensation according to differences between values of comparable estates held in fee simple and the values of those estates when burdened by perpetual easements for trail use

by the general public. Counsel will file a joint status report no later than Monday, December 12, submitting a reasonable deadline for filing appraisers' reports, on or before February 15, 2012.

s/ Robert H. Hodges, Jr.
Robert H. Hodges, Jr.
Judge
